Emma Clarke Baldwin v. Commissioner. Minnie C. Porter v. Commissioner. Nellie A. Buchanan v. Commissioner.
Baldwin v. Commissioner
Docket Nos. 3174, 3175, 3176.
United States Tax Court
1945 Tax Ct. Memo LEXIS 337; 4 T.C.M. (CCH) 67; T.C.M. (RIA) 45025; January 22, 1945
*337 Value as of June 23, 1941 of shares in a voting trust, each share representing a corresponding share in a certain corporation, determined for gift tax purposes. F. Eldred Boland, Esq., 444 California St., San Francisco, Calif, for the petitioners. Arthur L. Murray, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in gift taxes for 1941 against Emma Clarke Baldwin, Minnie C. Porter and Nellie A. b/uchanan as follows: Docket No.
Petitioner
Deficiency
3174
Emma Clarke Baldwin
$47,023.09
3175
Minnie C. Porter
32,360.86
3176
Nellie A. Buchanan
33,947.52
The single issue is the determination of the value on June 23, 1941, of certain voting trust shares representing equivalent shares of the C. W. Clarke Co., a corporation. Findings of Fact The petitioners are individuals residing at San Francisco, California. The gift tax return in each case was filed with the collector of internal revenue for the First District of California on February 28, 1942. The C. W. Clarke Co., hereinafter called the company, is a California corporation organized in 1906. Its principal *338 business is the ownership and operation of ranch properties, and other agricultural pursuits. The stock of the company consists of 1,000 shares of the par value of $100 each. All such shares were immediately issued and are still outstanding. After the original issue thereof, none of such shares was ever sold or exchanged, nor have they been quoted on any exchange, nor has any offer to buy or sell been made. On September 29, 1932, 995 shares of the company's stock were owned in approximately equal portions by four sisters, three of whom are the petitioners herein. On that day these four persons formed a voting trust covering these 995 shares and a certificate of stock representing 995 shares was issued to them as trustees. They thereupon issued to themselves voting trust certificates representing the shares of stock each had formerly owned. On June 23, 1941, the petitioners made gifts of some of their voting trust shares to certain donees as follows: No. of
Donor
Donee
Shares
Emma
Mildred Baldwin Hall
50
Clarke
Laura Baldwin Franklin
50
Baldwin
Clarke Lowe Hall
10
Cameron Baldwin Hall
10
James Lowe Hall, Jr.
10
Mrs. Stuart Franklin Rodri-
quez
11
Minnie C.
Amy Porter Ireland and Wil-
Porter
liam B. Ireland
75
Lolita Ireland Robbins
12
Bethune Murdoch Ireland
12
Nellie A.
Gladys Buchanan Brown
50
Buchanan
Lynda Buchanan
50
*339 The gifts were reported by the respective donors on Federal gift tax returns for 1941. On these returns they valued the shares at $825 each. The respondent determined that each share of the company and each share in the voting trust had a fair market value as of the date of the gift of $3,077.60. The net earnings of the company for the years 1936 to 1941 were $47,452.17 for 1936; $90,822.22 for 1937; $42,427.44 for 1938; $81,636.37 for 1939; $70,570.73 for 1940; and $62,652.72 for 1941. The average for the years 1936 to 1940, inclusive, was $66,581.79. The dividends paid for the years 1936 to 1941, inclusive, were as follows: 1936
$56,000
1937
48,000
1938
48,000
1939
48,000
1940
48,000
1941
51,000 The average for the years 1936 to 1940, inclusive, was $49,600. For the years 1915 to 1941, both inclusive, the average annual net earnings of the company was $84,281.47. The average dividends paid annually by the company over the same period was $78,444.44. The net worth of the company, based on assets "at appraised values" as of June 23, 1941, was $3,077,603.52, or $3,077.60 per share. The appraisal was made by the secretary of the company and other qualified *340 appraisers. The assets of the company "at appraised values" as of June 23, 1941, consisted of net current assets (cash, notes receivable, inventory of cattle, bonds, and stock) of $1,328,483.79; real estate investments of $1,754,201.45; and equipment of $10,864.22. Liabilities as of the same date totaled $15,945.94. The fair market value on June 23, 1941, of each share of the voting trust was $1,400. Opinion VAN FOSSAN, Judge: The only question before us is the determination of the fair market value as of June 23, 1941, of the shares in the voting trust which were the subject of the gifts by the petitioners. Since the trust and the corporation behind it were inextricably connected, the practical question before us is the value of the shares of the C. W. Clarke Co.
The petitioners contend that under the facts here present, value is determinable solely in relation to the income-producing capacity of the company and the dividends earned; that the proper method of valuing the stock of a corporation such as is before us, is to capitalize the average net earnings for an appropriate term at a fair rate; and that here the average net earnings of the company for the five years preceding *341 the date of the gifts should be capitalized at a rate of ten times earnings; and that following this formula, the value of the stock, and therefore of the voting trust shares, is not in excess of $660 per share. The respondent has receded from his original position as stated in the notices of deficiency that the fair market value of the stock is the same as its book value. He now contends that all the elements relating to the value of stock should be considered. Upon this theory, he now contends that the value of the stock on the date of the gifts was not less than $2,335 per share. Both parties introduced expert witnesses, each of whom testified as to his opinion of the value of the company's stock on the date in question and of the proper method of determining such value. The experts for the petitioners testified that, in their opinion, the value of the company's assets should not be considered and that the stock should be valued entirely upon the basis of the income-producing capacity of the company and on its past dividend-paying record. One of these experts valued the stock and the trust shares at $600. The other arrived at a value of $660. One of the respondent's witnesses *342 placed a value of $2,212.93 per share upon the company's stock. He arrived at this figure by averaging the appraised value of the company's assets, what he considered to be the liquidating value of the company, its average annual net earnings from 1936 to 1940, and its dividend record from 1915 to 1940. The other witness for the respondent valued the stock at $2,335 per share. He reached this conclusion by taking the average of the company's appraised value, its "adjusted" value as determined by him, and the average dividends paid by the company for 23 years, capitalized at 5 per cent. The value they placed upon the voting trust certificates did not differ from their estimate of the value of the company's stock. We do not adopt any one of the above figures. Our task is to find what is the fair market value of the voting trust shares, each of which represents one share of the stock of the company. We have determined that value to be $1,400 for each share. We can not agree with the petitioners that we should take into account only the earnings of the company in determining the value of its stock. The question of value is one of fact, not of formula. Estate of James Smith, 46 B.T.A. 337. *343 Net earnings are but one of the many factors to be taken into account in determining fair market value. In the absence of sales, the material factors to be considered in determining the fair market value of stock of a close corporation are its earning capacity and anticipated profits, book value, dividend yields, and such other facts and circumstances surrounding the corporation and its business as would be considered by a prospective buyer and seller. Mathilde B. Hooper, Administratrix, 41 B.T.A. 114. The regulations too, which have been cited with approval in many cases, provide that net earnings are but one of the elements entering into value. [1] They provide that in valuing the stock of a closely held corporation where bona fide bid and asked prices are not available, which is precisely the situation here, there should be considered the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. We have carefully considered all the evidence before us and have given due weight to all the elements entering into the determination of value. It *344 would serve no useful purpose to enumerate or discuss all the factors that led us to our conclusion. The value found will be used in the recomputation consequent on this opinion. Decisions will be entered under Rule 50. Footnotes
1. Regulations 108, Article 86.19 (c).↩